|   |   |   |
|---|---|---|
| | UNITED STATES DISTRICT COURT | |
| | DISTRICT OF NEVADA | |
| | * * * | |
| FLS TRANSPORTATION SERVICES (USA) INC., a Delaware foreign corporation, | Case No. 3:17-cv-00013-MMD-VPC | |
| Plaintiff, | ORDER | |
| v. | (Def.'s Motion to Dismiss – ECF No. 11; Def.'s Motion to Dismiss – ECF No. 18). | |
| ARLIEN CASILLAS, an individual and OPEN ROAD TRANSPORTATION, INC., an Oregon foreign corporation, | | |
| Defendants. | | |

**I.  SUMMARY**

Before the Court are Defendant Arlien Casillas's Motion to Dismiss ("Casillas's Motion") (ECF No. 11) and Defendant OpenRoad Transportation, Inc.'s ("OpenRoad") Motion to Dismiss ("OpenRoad's Motion") (ECF No. 18). The Court has reviewed Plaintiff FLS Transportation Services (USA) Inc.'s ("FLS") responses to both motions (ECF Nos. 20, 24) and Defendants' respective replies (ECF No. 27, 29). Both motions raise overlapping arguments and will be addressed collectively.

The Court denies both of Defendants' Motions to Dismiss for the reasons discussed below.

**II.  BACKGROUND**

The following facts are taken from the Complaint. (ECF No. 1.)

FLS is in the logistics business. It connects customers (retailers and manufacturers who need to ship things) with carriers (trucking companies and rail companies that can ship them). FLS alleges that one of its former employees conspired with a competitor,

OpenRoad, to appropriate FLS's customers, carriers, and employees in violation of duties imposed by contract and common law.

The trouble began when an FLS branch office operating in Reno suddenly failed in September 2016. The branch director—Arlien Casillas—resigned, and some of the long-term customers for whom Casillas was the principal FLS contact ceased nearly all of their business with FLS immediately. Berenisa Orozco and Cindy Dillard, employees of the FLS Reno branch office, also resigned.

About a month later, FLS's Reno office was reborn (in the same office space), but under the name of OpenRoad, another third-party logistics business and competitor to FLS. OpenRoad had no other offices in Nevada at the time, and this was only its second office outside the Pacific Northwest. FLS alleges the office is a near replica of its own—it is staffed by former FLS employees, patronized by former FLS customers, and provides services through former FLS carriers. The former FLS employees include Arlien Casillas, Berenisa Orozco, Cindy Dillard, and Melia Shively (an individual who worked for FLS from 2010 to 2016). The former FLS customers are those who stopped doing business with FLS when Casillas resigned. The former FLS carriers include those who provided services to FLS's long-term customers.

FLS further alleges that this reincarnation was a product of conspiracy, not happenstance. FLS surmises that Casillas began preparing for and implementing this transition (with OpenRoad's assistance) while still working for FLS, partly because the customers Casillas and OpenRoad purportedly appropriated "relied on FLS for a significant and complex volume of shipping needs. Enabling a seamless transition of their business from FLS to a competitor, like OpenRoad, would have taken weeks, if not months, of preparation." (ECF No. 1 at ¶ 55.) FLS alleges that the conduct of Casillas and OpenRoad has caused it to lose hundreds of thousands of dollars in profits.

### A. FLS's Business Model

FLS connects customers and carriers through its employees, called brokers, who determine customer needs and find carriers who can meet those needs. The brokers solicit

long-term customers through the use of proprietary information, such as carriers' specific routes, specific equipment, or price structures. The brokers execute contracts with customers on behalf of FLS. The brokers also execute contracts with carriers ("Carrier Contracts") on behalf of FLS. The Carrier Contracts prohibit carriers from cutting out the middleman (here, FLS):

> During the term of this Contract and for a period of one (1) year following its termination, Carrier shall not provide transportation services or related services to any of [FLS's] customers for which Carrier has provided services under this Contract, unless the shipments are tendered by [FLS]; provided, however, this provision shall not apply if Carrier has conducted business with such customer during the two years before [FLS] first tendered shipments to Carrier for such customer.

(ECF No. 1 at ¶ 58.)

FLS alleges that Casillas and OpenRoad induced FLS's carriers to violate this contractual provision, contending that former FLS carriers are providing services to former FLS customers with OpenRoad acting as the middleman.

### B. Casillas's Employment at FLS

FLS employed Defendant Arlien Casillas as the branch director of its Reno office beginning in September 2006. Casillas coordinated and managed the services that FLS provided through that office. She also managed and supervised other employees in the office, including Berenisa Orozco and Cindy Dillard. Casillas and her colleagues in the Reno branch office were the primary or exclusive contacts for several of FLS's large customers, and they used confidential information to do their jobs.

FLS and Casillas executed an agreement ("Casillas Employment Agreement") about confidentiality and solicitation of FLS employees several years into her employment, on or around October 11, 2013. The "Confidentiality Provision" of that agreement prohibits Casillas from disclosing certain information deemed confidential:

> Any information relating to our policies, processes, structures, operations, customers, or other employees acquired by you in the course of, or as a result of, your employment with [FLS] is considered confidential. Such information shall be treated as confidential, and may not be disclosed by you to any other person, firm or company during your employment or after without prior written authorization. Confidential information or

3

> material includes but is not limited to financial information, plans, strategies, corporate information and any other information deemed "confidential", unless information is available to the general public or in the public domain.

(ECF No. 1 at ¶ 23.) The "Non-Solicitation Provision" of that agreement prohibits Casillas from encouraging any FLS employees to leave FLS:

> It is a term of this offer that you agree that during your employment, and for a period of 6 months following the termination of such employment for any reason whatsoever, you shall not either individually or in partnership or conjunction with any person or persons, firms, association, syndicate, company or corporation as principal, employee, contractor, shareholder or agent, directly or indirectly encourage any [FLS] employee to leave employment with [FLS].

(*Id.* at ¶ 24.)

Casillas voluntarily resigned from FLS about three years later. She first went on medical leave on September 8, 2016, then resigned "due to illness and inability to perform her duties at FLS" on September 26, 2016. (ECF No. 1 at ¶ 30.) FLS sent a letter to Casillas reminding her to comply with the Casillas Employment Agreement, including the Confidentiality and Non-Solicitation Provisions.

FLS alleges that, while still working for FLS, Casillas disclosed FLS's confidential information to OpenRoad and solicited FLS customers and carriers to do business with OpenRoad, all with OpenRoad's assistance, cooperation, and inducement.

### C. Orozco and Dillard's Employment at FLS

Berenisa Orozco and Cindy Dillard both resigned from FLS in September, shortly before Casillas resigned. Orozco was a relatively new FLS employee, having started in November 2015. Dillard had been working for FLS longer, having started in July 2010. Both "were entrusted with confidential, proprietary, and strategic information concerning FLS's services and business and its relationships with customers and carriers." (ECF No. 1 at ¶ 40.) When Orozco and Dillard resigned, FLS executed "Separation Agreements" with both of them that prohibited them from disclosing confidential information:

> Employee shall not use for any purpose or disclose to any person or entity any confidential information acquired during the course of employment with [FLS]. Employee shall not,

4

> directly or indirectly, copy, take, or remove from [FLS's] premises any of [FLS's] books, records, customer lists, or any other documents or materials. The term "confidential information" as used in this Agreement includes, but is not limited to, records, lists, and knowledge of [FLS]'s customers, suppliers, methods of operation, processes, trade secrets, methods of determination of prices, financial condition, profits, sales, net income, and indebtedness, as the same may exist from time to time.

(ECF No. 1 at ¶ 42.)

FLS alleges that Casillas (with OpenRoad's assistance) "encouraged, recruited, and induced" Orozco and Dillard to leave FLS while all three were still working for FLS. (ECF No. 1 at ¶¶ 43, 44.) FLS further alleges that Casillas and OpenRoad encouraged Orozco and Dillard "to use or disclose FLS's confidential information" in violation of the Separation Agreements. (ECF No. 1 at ¶ 43.)

### D. OpenRoad's Website Posts

OpenRoad posted on its website twice about the Reno branch office. One article, titled "Reno Office Added to OpenRoad's Roster," notes that "[t]he Reno team started up in the fall of 2016." (ECF No. 1 at ¶ 46.) This article was published on November 4, 2016. Another article, titled "Arlien Casillas Leading OpenRoad Reno's Hot Start," attributes "[t]he early success of the office . . . to the leadership of Arlien Casillas and her experienced team of transportation professionals." (ECF No. 1 at ¶ 47.) This article was published on December 8, 2016.

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S.

at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations—but not legal conclusions—in the complaint. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

## IV. DISCUSSION

### A. Breach of Duty of Loyalty and Fiduciary Duties

Casillas argues that FLS's claim for breach of duty of loyalty and fiduciary duties should be dismissed for three reasons: FLS failed to plead facts sufficient to support the claim; the claim is subsumed by FLS's breach of contract claim under the economic loss doctrine; and employees do not breach their duty of loyalty by preparing to compete with their employers. (ECF No. 11 at 9-11.) The Court disagrees with Casillas and denies her motion as to FLS's claim for breach of duty of loyalty and fiduciary duties.

#### 1. Adequacy of Factual Allegations

FLS adequately pleaded its claim for breach of duty of loyalty and fiduciary duties in its complaint. The claim has three elements: "(1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused the damages." *New England Life Ins. Co. v. Lee*, No. 2:14-cv-1797-JCM-NJK, 2015 WL 1413391, at *6 (D. Nev. Mar. 27, 2015)

///

(quoting *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009)).

FLS satisfies the first element—existence of a duty—by alleging that an agency relationship existed between FLS and Casillas. Specifically, FLS alleges that it employed Casillas as the branch director of FLS's branch office in Reno, Nevada from September 2006 to September 26, 2016. (ECF No. 1 at ¶¶ 21, 25.) An employment relationship gives rise "to a duty not to compete with the principal concerning the subject matter of his agency." Restatement (Second) of Agency § 393 (1958).

FLS satisfies the second element—breach—by alleging facts from which the Court can reasonably infer breach of the duty not to compete. FLS alleges that its long-term customers stopped doing business with FLS when Casillas (their sole contact at FLS) resigned, only to become customers of OpenRoad about a month later. (ECF No. 1 at ¶¶ 46, 48, 50.) Plaintiff alleges that this transition, "would have taken weeks, if not months, of preparation." (*Id.* at ¶ 55.) The coinciding departures of Casillas and FLS customers, along with the speed at which the same customers began patronizing OpenRoad, leads to the reasonable inference that Casillas began laying the groundwork for OpenRoad while she was employed by FLS.

FLS satisfies the third element—damages—by alleging that it lost "hundreds of thousands of dollars in profits" as a result of losing the customers Casillas purportedly appropriated for OpenRoad. (ECF No. 1 at ¶¶ 48-50.)

### 2. Economic Loss Doctrine

The Court cannot conclude at this early stage of litigation that the economic loss doctrine bars FLS's claim for breach of duty of loyalty and fiduciary duties. The economic loss doctrine bars unintentional tort actions when plaintiffs seek to recover purely economic losses, as opposed to damages involving physical harm to person or property. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007); *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009) (en banc). Intentional torts, by contrast, "are not barred by the economic loss doctrine." *Halcrow, Inc.*

1  *v. Eighth Judicial Dist. Court*, 302 P.3d 1148, 1154 n.2 (Nev. 2013), *as corrected* (Aug. 14, 2013). This Court has repeatedly declined to apply the economic loss doctrine to dismiss intentional torts, including breach of fiduciary duty. *See, e.g.*, *Bank of Am. v. Bailey*, No. 2:14-cv-885-JCM-GWF, 2016 WL 3410174, at *5 (D. Nev. June 15, 2016) (holding that economic loss doctrine did not bar claim for breach of fiduciary duty).[1]

Nevertheless, the economic loss doctrine does bar a subset of intentional torts—those that duplicate breach of contract claims. *See, e.g.*, *Kenny v. Trade Show Fabrications W., Inc.*, No. 2:15-cv-00410-JCM-VCF, 2016 WL 697110, at *5 (D. Nev. Feb. 18, 2016) (dismissing claim of conversion for failure to pay compensation when such failure amounted to a breach of contract).[2] The Nevada Supreme Court has suggested it would take the same position. *See Davis v. Beling*, 278 P.3d 501, 514 (Nev. 2012) ("The economic loss doctrine does not, however, bar the recovery of purely economic losses when the defendant intentionally breaches a duty that is imposed *independently* of the obligations arising from contract.") (emphasis added). The Court cannot determine how

///

---

[1] *See also Gaming v. Trustwave Holdings, Inc.*, No. 2:15-cv-02464-GMN-PAL, 2016 WL 5799300, at *5 (D. Nev. Sept. 30, 2016) (holding that economic loss doctrine did not bar claim of fraud); *Las Vegas Metro. Police Dep't v. Harris Corp.*, No. 2:13-cv-01780-GMN-VCF, 2014 WL 3474278, at *2 (D. Nev. July 11, 2014) (holding that economic loss doctrine did not bar claim of fraudulent misrepresentation); *First Nat. Bank of Ely v. Progressive Cas. Ins. Co.*, No. 3:11-cv-00859-RCJ-WGC, 2012 WL 5944847, at *6 n.2 (D. Nev. Nov. 27, 2012) (holding that economic loss doctrine did not bar claim of fraud); *Silver State Broad., LLC v. Beasley FM Acquisition Corp.*, No. 2:11-cv-01789-MMD-CWH, 2012 WL 4049481, at *5 (D. Nev. Sept. 12, 2012) (holding that economic loss doctrine did not bar claims of intentional torts including breach of fiduciary duty); *Fuoroli v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:10-cv-2191-JCM-GWF, 2011 WL 1871236, at *5 (D. Nev. May 16, 2011) (holding that economic loss doctrine did not bar claim of fraudulent misrepresentation); *Menalco v. Buchan*, No. 2:07-cv-01178-PMP-PAL, 2010 WL 428911, at *31 (D. Nev. Feb. 1, 2010) (holding that economic loss doctrine did not bar claim of fraud).

[2] *See also First Magnus Fin. Corp. v. Rondeau*, No. 2:07-cv-132-JCM-PAL, 2012 WL 607563, at *2 (D. Nev. Feb. 24, 2012) ("The economic loss doctrine further bars breach of fiduciary duty claims premised on a contractual relationship."); *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1246, 1260 (D. Nev. 2006) (concluding that a claim for breach of duty of loyalty was "subject to dismissal pursuant to the economic loss doctrine" if the defendant's conduct were prohibited by contract). The Ninth Circuit has barred a tort claim that amounted to a breach of contract claim, though the tort was negligent rather than intentional. *GCM Air Grp., LLC v. Chevron U.S.A., Inc.*, 386 F. App'x 717, 718 (9th Cir. 2010).

much FLS's claim for breach of contract overlaps its tort claim for breach of duty of loyalty and fiduciary duties at this stage of litigation, though the tort claim may be subject to dismissal under the economic loss doctrine if it ultimately duplicates the contract claim.[3]

### 3. Preparations to Compete

The privilege workers enjoy to prepare to compete with their employers does not bar any claim at this stage of litigation. Workers do not breach a duty by making preparations *during* their jobs to compete after *leaving* their jobs. *White Cap Indus. v. Ruppert*, 67 P.3d 318, 319 (Nev. 2003); *see also* Restatement (Second) of Agency § 393 cmt. e (1958). There are certain restrictions, however. An agent preparing to compete "cannot properly use confidential information peculiar to his employer's business and acquired therein." Restatement (Second) of Agency § 393 cmt. e. Nor can an agent "solicit customers for such rival business before the end of his employment [or] properly do other similar acts in direct competition with the employer's business." *Id.*

Accepting FLS's allegations as true, Casillas engaged in conduct the Restatement prohibits. Casillas used confidential information acquired through her employment at FLS to appropriate FLS's customers, carriers, and employees for OpenRoad while still employed by FLS. (ECF No. 1 at ¶ 68.) Therefore, FLS has plead a colorable claim for breach of the duty of loyalty and fiduciary duties.

## B. Breach of Contract

Casillas argues that FLS failed to adequately plead facts sufficient to support its breach of contract claim. (ECF No. 11 at 12.) Casillas also argues that the contract is unenforceable. (*Id.*) The Court disagrees with Casillas's first argument and declines to consider her second argument at this stage of litigation.

### 1. Adequacy of Factual Allegations

Plaintiffs must show four elements to succeed on claims for breach of contract: "(1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3)

---

[3]Moreover, dismissing the tort claim would be premature at this stage of litigation when Defendants argue the contracts in question are either unenforceable (ECF No. 11 at 12-15; ECF No. 18 at 7-9) or invalid (ECF No. 11 at 3 n.3).

material breach by the defendant; and (4) damages." *Laguerre v. Nevada Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011).

Casillas disputes that FLS adequately pleaded the third element—material breach—with respect to both the Confidentiality and Non-Solicitation Provisions of the Casillas Employment Agreement. (ECF No. 11 at 15-16.)

### a. Confidentiality Provision

FLS pleads breach of the Confidentiality Provision by alleging that Casillas disclosed FLS's confidential information to OpenRoad. (ECF No. 1 at ¶¶ 52, 69, 75.) FLS supports this conclusion by alleging that FLS customers, carriers, and employees seamlessly transitioned from FLS to OpenRoad over the same, impossibly short, time period. (*Id.* at ¶¶ 38, 40, 48, 50, 54-56.) The Court can reasonably infer that Casillas enabled this seamless transition by disclosing confidential information to OpenRoad.

### b. Non-Solicitation Provision

FLS pleads breach of the Non-Solicitation Provision by alleging that Casillas encouraged, recruited, and induced other FLS employees to work at OpenRoad, all while she was still employed by FLS. (*Id.* at ¶¶ 43-44, 68, 75.) FLS has alleged facts that make these assertions plausible. FLS alleges that Casillas, Orozco, and Dillard resigned in the same month (ECF No. 1 at ¶¶ 30, 39), only to find themselves working together in the same office space for OpenRoad about a month later (*Id.* at ¶¶ 35, 38, 46). Coupled with the seamless transition of FLS's long-term customers and carriers to OpenRoad (which necessitated previously laid groundwork), it is reasonable to infer that Casillas recruited Orozco and Dillard while still working for FLS in violation of the Non-Solicitation Provision.

Casillas also contends that the information she allegedly divulged was not confidential (ECF No. 11 at 16), but FLS alleges it was (ECF No. 1 at ¶¶ 52, 69, 75). The Court must accept FLS's allegations as true at this stage of the litigation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

///

///

### 2. Contract Enforceability

Casillas argues that the Confidentiality and Non-Solicitation Provisions of the Casillas Employment Agreement are unenforceable because they are unreasonable. (ECF No. 11 at 12-15.) Restrictive covenants must be "reasonable under the circumstances." *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 224 (Nev. 2005). "A restrictive covenant on employment will be upheld only if it is reasonably necessary to protect the business and goodwill of the employer. The amount of time the covenant lasts, the territory it covers, and the hardship imposed upon the person restricted are factors for the court to consider in determining whether such a covenant is reasonable." *Jones v. Deeter*, 913 P.2d 1272, 1275 (Nev. 1996) (internal citation omitted).

This standard invites resolution of factual questions—such as the circumstances surrounding the agreement and hardship imposed upon Casillas—that are not appropriately addressed at this stage of litigation. *See Boart Longyear, Inc. v. Nat'l EWP, Inc.*, No. 2:11-cv-2106-JCM-RJJ, 2012 WL 1985293, at *3 (D. Nev. June 4, 2012) ("At the motion to dismiss stage, the court is not inclined to weigh the reasonableness of the non-competition agreement."); *see also Yarn v. Hamburger Law Firm, LLC*, No. 1:12-03096, 2014 WL 2964986, at *4 (D. Md. June 30, 2014) ("The issue of enforceability is not grounds to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."). Consequently, the Court declines to consider the reasonableness of the Confidentiality and Non-Solicitation Provisions of the Casillas Employment Agreement at this stage of litigation.

### C. Intentional Interference with Contractual Relations

FLS alleges that Casillas and OpenRoad intentionally interfered with several different contracts. Against Casillas, FLS alleges intentional interference with the Separation Agreements binding Orozco and Dillard as well as unspecified Carrier Contracts. (ECF No. 1 at ¶ 82.) Casillas argues that FLS failed to plead facts showing that Casillas acted with intent. (ECF No. 11 at 16.) Casillas further argues that the competitor's privilege bars FLS's claim. (*Id.*)

Against OpenRoad, FLS alleges intentional interference with the following contracts: the Casillas Employment Agreement, the Separation Agreement between FLS and Orozco, the Separation Agreement between FLS and Dillard, and the Carrier Contracts. (ECF No. 1 at ¶ 82.) OpenRoad argues that FLS failed to plead facts showing that breach of these contracts occurred (ECF No. 18 at 9-11); that the competitor's privilege bars FLS's claim (*Id.* at 11); and that the contract provisions OpenRoad allegedly disrupted are unenforceable (*Id.* at 7-9).

The Court finds Defendants' arguments for dismissing FLS's claim for intentional interference with contractual relations unpersuasive.

### 1. Adequacy of Factual Allegations

The elements of an intentional interference with contractual relations claim are: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *New England Life Ins. Co. v. Lee*, No. 2:14-cv-1797-JCM-NJK, 2015 WL 1413391, at *9 (D. Nev. Mar. 27, 2015) (quoting *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003)). Casillas argues that FLS failed to plead the third element—intent. (ECF No. 11 at 16-17.) OpenRoad argues that FLS failed to plead the fourth and fifth elements—breach and damage. (ECF No. 18 at 9-12; ECF No. 29 at 8-9.)

#### a. Intent

Casillas argues that FLS failed to plead facts showing that Casillas acted with intent to disrupt the Separation Agreements and the Carrier Contracts. (ECF No. 11 at 16-17.) With respect to the Separation Agreements, it is reasonable to infer that Casillas acted with intent from the fact that FLS customers, carriers, and employees seamlessly transitioned from FLS to OpenRoad over the same, impossibly short, time period. (*Id.* at ¶¶ 38, 40, 48, 50, 54-56.) It is reasonable to infer that this chain of events was the product of intent rather than chance.

///

With respect to the Carrier Contracts (which prohibited carriers from cutting out the middleman and selling their shipping services directly to customers), it is reasonable to infer that Casillas acted with intent from the fact that FLS customers (for whom Casillas was the primary or exclusive FLS contact) transitioned to OpenRoad during the same, impossibly short, time period as Casillas. (*Id.* at ¶¶ 27, 48, 50.) It is reasonable to infer that hundreds of thousands of dollars' worth of business migrated from FLS to OpenRoad (*Id.* at ¶ 49-50) at the same time as Casillas because she acted with the intent to cause that result. It is less reasonable to chalk it up to coincidence.

### b. Breach

OpenRoad argues that FLS failed to adequately allege breach of the confidentiality provisions contained in the Casillas Employment Agreement and the Separation Agreements, the Non-Solicitation Provision of the Casillas Employment Agreement, and the Carrier Contracts. (ECF No. 18 at 9-11.)

With respect to the Confidentiality Provision of the Casillas Employment Agreement and the Separation Agreements, OpenRoad argues that the information Casillas, Orozco, and Dillard allegedly shared with OpenRoad was not confidential and that the Complaint fails to specify what confidential information was shared. (*Id.* at 10.) But at this point in the litigation, the Court must accept FLS's factual allegations that the information was indeed confidential (ECF No. 1 at ¶ 52) as true. *Ashcroft v. Iqbal*, 566 U.S. 662, 678-79 (2009). It is not necessary at this stage of litigation for FLS to specify what confidential information was shared. It is sufficient that FLS has alleged facts from which a reasonable inference can be drawn that Casillas, Orozco, and Dillard shared confidential information. The facts that support this inference are: (1) Casillas, Orozco, and Dillard had access to confidential information such as knowledge of FLS's customers (ECF No. 1 at ¶¶ 28, 40); (2) Casillas opened a new branch office for OpenRoad in the same office space where she operated the branch office for FLS (*Id.* at ¶¶ 35, 37); (3) Orozco and Dillard worked there with Casillas (*Id.* at ¶ 38); and (4) FLS employees and long-term customers left FLS for OpenRoad around the same time that Casillas, Orozco, and Dillard left FLS for OpenRoad

(*Id.* at ¶¶ 40, 48, 50). It is reasonable to infer from these facts that Casillas shared "information relating to [FLS's] policies, processes, structures, operations, customers, or other employees" with OpenRoad. (*Id.* at ¶ 23.) It is also reasonable to infer that Orozco and Dillard shared confidential information including "records, lists, and knowledge of [FLS's] customers" with OpenRoad. (*Id.* at ¶ 42.)

With respect to the Non-Solicitation Provision of the Casillas Employment Agreement, OpenRoad argues that FLS failed to allege facts from which the Court can reasonably infer that Casillas solicited Orozco and Dillard to work for her at Open Road (likely a breach of the Non-Solicitation Provision). (ECF No. 18 at 10-11.) OpenRoad seems to contend that it would be unreasonable to infer that Casillas solicited Orozco and Dillard to work for her at OpenRoad for two reasons.

First, OpenRoad argues, Casillas was on leave when Orozco and Dillard left. (*Id.* at 10.) But it is reasonable to infer that Casillas was working with OpenRoad to make plans for the new office before or while she was on medical leave. The factual basis for this inference is the inconsistency between her words and her actions. She resigned from FLS "due to illness and inability to perform her duties at FLS," yet she reconstituted FLS's Reno branch office for OpenRoad about a month later. (ECF No. 1 at ¶¶ 30, 46, 47.)

Second, OpenRoad argues, Orozco, and Dillard resigned from FLS before Casillas. (ECF No. 18 at 10.) But it is reasonable to infer that Casillas induced Orozco and Dillard to resign because they all resigned in the same month (ECF No. 1 at ¶¶ 30, 39), only to find themselves working together in the same office space for OpenRoad about a month later (*Id.* at ¶¶ 35, 38, 46). The proximity—not the sequence—of the resignations is what grounds the inference. Moreover, Casillas was as good as gone when Orozco and Dillard left because she was presumably on medical leave (from which she never returned). (*See id.* at ¶¶ 29, 30, 40.)

With respect to the Carrier Contracts, OpenRoad argues that the contract only prevents the carriers from contacting FLS's competitors—not vice versa. (ECF No. 18 at 11.) While this seems to be true from the short excerpt of the Carrier Contracts that

14

appears in the Complaint, FLS alleges a different kind of breach. The Carrier Contracts forbid carriers from providing services to "any of [FLS's] customers for which Carrier has provided services under this Contract, unless the shipments are tendered by [FLS]." (ECF No. 1 at ¶ 58.) FLS alleges that carriers have provided services to FLS customers with the shipments being tendered by OpenRoad (*Id.* at ¶ 57), an apparent violation of the plain language of the contract. Consequently, FLS has sufficiently pleaded breach.

### c. Damage

OpenRoad argues that FLS has failed to allege any damages resulting from OpenRoad's purported interference with the Separation Agreements. (ECF No. 29 at 8-9.) This is incorrect. FLS alleges that it lost business worth hundreds of thousands of dollars (ECF No. 1 at ¶ 49) when OpenRoad (and Casillas) induced Orozco and Dillard to disclose confidential information in violation of the Separation Agreements (*Id.* at ¶ 43.)

### 2. Competitor's Privilege

Casillas and OpenRoad both argue that the competitor's privilege bars FLS's claim for intentional interference with the Carrier Contracts. (ECF No. 11 at 17-18; ECF No. 18 at 11.) "[A] competitor is privileged to divert business to itself by all fair and reasonable means." *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003). If FLS's allegations are true (that Casillas and OpenRoad conspired to appropriate FLS's customers, carriers, and employees in violation of duties imposed by contract and common law), then Casillas and OpenRoad failed to divert business by "fair and reasonable means." Accepting FLS's allegations as true, the Court cannot dismiss FLS's claim based on the competitor's privilege at this stage of litigation.

### 3. Contract Enforceability

OpenRoad argues that the confidentiality and non-solicitation provisions of the Casillas Employment Agreement are overly broad and unenforceable and that the confidentiality provisions (identical) in the Separation Agreements are overly broad and unenforceable. (ECF No. 18 at 7-9.) The Court will not consider these arguments at this stage of litigation. *See supra* Section IV.B.ii.

### D. Breach of Implied Covenants of Good Faith and Fair Dealing

Casillas argues that FLS's claim for breach of implied covenants of good faith and fair dealing must be dismissed because it duplicates FLS's claim for breach of contract. (ECF No. 11 at 19.) "A contractual breach of the implied covenant of good faith and fair dealing occurs when the terms of a contract are literally complied with, but where the defendant takes some action to deprive the plaintiff of his benefit under the contract." *Romm v. Hartford Ins. Co. of the Midwest*, No. 2:12-cv-01412-RCJ-PAL, 2012 WL 4747137, at *3 (D. Nev. Oct. 2, 2012). FLS's breach of contract claim concerns breach of the Confidentiality and Non-Solicitation Provisions of the Casillas Employment Agreement. (*See* ECF No. 1 at ¶ 75.) FLS's breach of implied covenant claim is different. It includes FLS's "justified expectations under her employment agreement [that she would not work] with a competing company during her employment." (ECF No. 20 at 19-20.) It is conceivable that Casillas literally complied with the terms of the Casillas Employment Agreement but still deprived FLS of its justified expectations that she would not work with OpenRoad while she worked for FLS. Thus, the Court finds that the claims are sufficiently distinct to preclude dismissal at this stage.

### E. Unjust Enrichment

Casillas and OpenRoad both argue that FLS's unjust enrichment claim must be dismissed because FLS alleges breach of express, written contracts. (ECF No. 11 at 19; ECF No. 18 at 11-12.) Such a contract usually precludes a claim of unjust enrichment. *LeasePartners Corp. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997). The Court agrees with FLS, however, that it is too early to rule out unjust enrichment when Defendants argue the contracts in question are either unenforceable (ECF No. 11 at 12-15; ECF No. 18 at 7-9) or invalid (ECF No. 11 at 3 n.3). *Liggio v. Weigner*, No. 2:15-cv-01973-APG-CWH, 2016 WL 5661906, at *3 (D. Nev. Sept. 28, 2016) (finding that dismissal of the plaintiffs' claim for unjust enrichment would be "premature" when the defendant "denie[d] that the promissory notes [were] enforceable contracts"); *Hydrotech,*

///

16

*Inc. v. Ames Constr., Inc.*, No. 3:12-cv-00262-LRH-WGC, 2013 WL 551510, at *2 (D. Nev. Feb. 12, 2013) (same).

OpenRoad additionally argues that FLS has "failed to allege or demonstrate any benefit which FLS conferred on Defendant OpenRoad." (ECF No. 18 at 12.) "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (quoting *Nevada Indus. Dev., Inc. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987)). "The essential elements of unjust enrichment 'are a benefit conferred on the defendant Court by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit." *Id.* (quoting *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)). OpenRoad contends that the only benefit FLS alleged to have conferred upon OpenRoad was "a benefit . . . in the form of revenues derived from customer and carrier and employee relationships and infrastructure that . . . OpenRoad improperly diverted from FLS." (ECF No. 18 at 12.) OpenRoad basically argues that the lost revenue was never FLS's to give. This is beside the point, however. Unjust enrichment includes "the unjust retention of a benefit to the loss of another." *Coury v. Robison*, 976 P.2d 518, 521 (Nev. 1999) (quoting *Nevada Indus. Dev., Inc. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987)). Here, FLS alleges that OpenRoad received the benefit of something that was undoubtedly FLS's to lose—its long-term customers that Casillas recruited to OpenRoad. (ECF No. 1 at ¶¶ 53-56.) In addition, OpenRoad fails to acknowledge that FLS alleged OpenRoad received the benefit of FLS's confidential information to FLS's detriment. (*Id.* at ¶¶ 52, 68.) Accepting FLS's allegations at true, as this Court must at the motion to dismiss stage, FLS has adequately pleaded a claim for unjust enrichment.

**F.    Aiding and Abetting Breaches of Contractual and Legal Duties**

Defendants first argue that FLS's aiding and abetting claim is barred because the underlying claims fail. (ECF No. 11 at 20; ECF No. 18 at 12-13.) The Court cannot dismiss

///

FLS's claim on this ground because the Court cannot yet conclude that FLS's underlying claims fail as a matter of law.

OpenRoad argues in the alternative that FLS has failed to plead facts from which the Court can reasonably infer that the elements of the claim are satisfied. (ECF No. 18 at 12-13.) Under Nevada law, "liability attaches for civil aiding and abetting if the defendant substantially assists or encourages another's conduct in breaching a duty to a third person." *See Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Thus, FLS must allege facts showing that (1) Casillas breached her contractual or legal duties to FLS; (2) OpenRoad was aware of its role in assisting or encouraging the breach; and (3) OpenRoad knowingly and substantially assisted Casillas. *See G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1246, 1261 (D. Nev. 2006).

FLS has alleged facts from which the Court can reasonably infer each of these elements. FLS satisfies the first element—breach—by alleging that Casillas recruited customers to OpenRoad while employed by FLS using confidential information in violation of the Casillas Employment Agreement. (ECF No. 1 at ¶¶ 50-52.) This conclusion is supported by the fact that long-term FLS customers transitioned to OpenRoad at the same time as Casillas (and over an impossibly short time period). (*Id.* at ¶¶ 54-56.) FLS also satisfies the first element by alleging that Casillas recruited FLS employees to OpenRoad in violation of the Non-Solicitation Provision of the Casillas Employment Agreement. (*Id.* at ¶¶ 43-44.) This conclusory allegation is supported by the fact that Orozco and Dillard resigned from FLS when Casillas did (*Id.* at ¶ 40) and joined OpenRoad when Casillas did (*See id.* at ¶ 38).

FLS satisfies the second element—knowledge—by alleging that Casillas went to work for OpenRoad, taking FLS's customers, carriers, and employees with her. (*Id.* at ¶¶ 38, 48, 50, 54-57.) It is reasonable to infer that OpenRoad knew that Casillas was using confidential information to secure former FLS customers, carriers, and employees for OpenRoad.

FLS satisfies the third element—substantial assistance—by alleging that OpenRoad hired Casillas. (*Id.* at ¶ 35.) Accepting as true the fact that Casillas used confidential information to recruit customers from FLS to OpenRoad, it is reasonable to infer that OpenRoad's employment of Casillas constituted substantial assistance in helping her accomplish that act.

### G. Civil Conspiracy

Defendants challenge the sufficiency of the factual allegations in the Complaint. (ECF No. 11 at 20; ECF No. 18 at 13-14.) "An actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (quoting *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989)). FLS alleges details in the Complaint that reasonably give rise to the inference that conspiracy occurred. FLS alleged that FLS customers, carriers, and employees all moved from FLS to OpenRoad in the same, impossibly short, time period. (*Id.* at ¶¶ 38, 40, 48, 50, 54-56.) It is reasonable to infer that Casillas and OpenRoad worked together to make that happen. Casillas attributes the change to competition (ECF No. 27 at 11), but that theory fails to account for the speed and scope of the transition.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of either of Defendants' Motions.

///

///

///

///

///

It is therefore ordered that Casillas's Motion to Dismiss (ECF No. 11) is denied.

It is further ordered that OpenRoad's Motion to Dismiss (ECF No. 18) is denied.

DATED THIS 18th day of September 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE