UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FLS TRANSPORTATION SERVICES, INC.,

Plaintiff,

v.

ARLIEN CASILLAS, et al.,

Defendants.

Case No. 3:17-CV-0013-MMD (VPC)

**ORDER**

Defendant Arlien Casillas ("Ms. Casillas") moves to disqualify attorney Robert W. Tormohlen ("Mr. Tormohlen"), his law firm, Lewis Rice, LLC ("Lewis Rice") and local counsel. Holley Driggs, Walsh, Puzey & Thompson ("Holley Driggs") from representing plaintiff FLS Transportation Services (USA) Inc. ("FLS") in this action (ECF No. 60/61). FLS responded (ECF No. 69/70) and Ms. Casillas replied (ECF No. 77/78). The basis for the motion is that Mr. Tormohlen and Lewis Rice represented Ms. Casillas in prior lawsuit. This order follows.

**I.    Procedural History**

This case is about the logistics business. FLS and OpenRoad are competitors, but this case also concerns another of their competitors, C.H. Robinson Worldwide ("CHR"), since a prior lawsuit between FLS and CHR is the basis of this motion. Logistics companies connect customers (retailers and manufacturers who need to ship things) with carriers (trucking companies and rail companies that can ship them (ECF No. 1).[1] These companies connect customers and carriers through their employees, called brokers, who determine customer needs and find carriers who can

---

[1] The court assumes that OpenRoad and CHR's business models are similar to FLS's; therefore, the court recounts the relevant facts as so well summarized in the District Courts order denying the defendants' motions to dismiss (ECF No. 62).

meet those needs. Brokers solicit customers through the use of proprietary information, such as carriers' specific routes, specific equipment, or price structures. The brokers execute the contract with customers. Brokers also execute contracts with carriers ("carrier contracts") on behalf of their employers. The carrier contracts prohibit carriers from cutting out the middleperson (here FLS):

> During the term of this Contract and for a period of one (1) year following its termination, Carrier shall not provide transportation services or related services to any of [FLS's] customers for which Carrier has provided services under this Contract, unless the shipments are tendered by [FLS]; provided, however, this provision shall not apply if Carrier has conducted business with such customer during the two years before [FLS] first tendered shipments to Carrier for such customer.

(ECF No. 1 at ¶ 58).

The court also surmises that it is common for logistics businesses to require their employees to sign an employment agreement, which includes a confidentiality and non-solicitation provision similar to the one FLS and Ms. Casillas signed in this case. The "confidentiality provision" of that agreement prohibits Ms. Casillas from disclosing certain information deemed confidential:

> Any information relating to our policies, processes, structures, operations, customers, or other employees acquired by you in the course of, or as a result of, your employment with [FLS] is considered confidential. Such information shall be treated as confidential, and may not be disclosed by you to any other person, firm or company during your employment or after without prior written authorization. Confidential information or other material includes but is not limited to financial information, plans, strategies, corporate information and any other information deemed "confidential," unless information is available to the general public or in the public domain.

(Id. at ¶ 23.)

The non-solicitation provision of that same agreement provides as follows:

> It is a term of this offer that you agree that during your employment, and for a period of 6 months following the termination of such employment for any reason whatsoever, you shall not either individually or in partnership or conjunction with any person or persons, firms, association, syndicate, company or corporation as principal, employee, contractor, shareholder or agent, directly or

2

>indirectly encourage any [FLS] employee to leave employment with [FLS].

(*Id.* at ¶ 24).

The court now turns to the prior lawsuit in which Ms. Casillas was employed by CHR.

### A. Ms. Casillas's Prior Employment with C.H. Robinson Worldwide, Inc. and the 2008 Lawsuit

FLS was not Ms. Casillas's first employer in the transportation logistics industry. As earlier noted, CHR is a competitor of FLS, and Ms. Casillas was hired to head CHR's new Reno office in November 2001 until May 2006 when she voluntarily resigned. (ECF No. 60, Ex. 5) CHR, like FLS, required Ms. Casillas to sign an employment agreement with covenants restricting the solicitation of employees and customers as well as the disclosure of confidential or proprietary information. *See Id*. FLS knew Ms. Casillas and other CHR employees were subject to restrictive covenants. *See Id*. at 11. Nevertheless, FLS recruited Ms. Casillas and other CHR employees and assured them it intended to challenge the enforceability of their obligations to CHR. *See Id*. at 10-11. FLS enticed CHR employees to join FLS with promises of lucrative commissions and bonuses, and it used CHR's former employees as part of its strategic expansion plan. *See Id*.

In 2008, CHR sued FLS, its executives, and various former CHR employees, including Ms. Casillas, in Minnesota state court (ECF No. 60, Ex. 5) (*C.H. Robinson Worldwide, Inc. v. FLS Transportation, Inc., et al.*," State of Minnesota District Court, County of Hennepin, Fourth Judicial District, Court File No. 27-CV-08-4789 ) ("*CHR v. FLS*"). FLS initially retained a Minnesota firm to jointly represent all defendants, including Ms. Casillas. (ECF No. 60 at 4). However, FLS later retained Mr. Tormohlen and Lewis Rice to represent all of the FLS defendants, and the case settled in February 2011 (ECF No. 69 at 23).

### B. Ms. Casillas's Employment with FLS from September 2006 through September 2016

FLS employed defendant Ms. Casillas as the branch director of its Reno office beginning in September 2006. Ms. Casillas coordinated and managed the services that FLS provided through that office. She also managed and supervised other employees in the office including Berenisa Orozco and Cindy Dillard. Ms. Casillas and her colleagues in the Reno branch office were the

primary or exclusive contacts for several of FLS's large customers, and they used confidential information to do their jobs.

FLS and Ms. Casillas executed an employment agreement about confidentiality and solicitation of FLS employees several years into her employment, on or around October 11, 2013. That employment agreement contained the confidentiality and nondisclosure provision cited earlier.

### C. Ms. Casilas's employment with OpenRoad from September 2016 to present

As noted earlier, OpenRoad is a competing logistics company, and it entered into the Reno market in 2016 and hired Ms. Casillas. (ECF No. 11). This lawsuit followed. Since Mr. Tormehlen represented FLS, Ms. Casillas and other FLS employees in the *CHR v. FLS* lawsuit, OpenRoad seeks Mr. Tormehlen and his law firm's disqualification.

## II. Legal Discussion and Analysis

Disqualification of counsel is a drastic measure which courts should hesitate to impose except when absolutely necessary. . . . Motions to disqualify opposing counsel are subject to particularly strict judicial scrutiny because there is a significant possibility of abuse for tactical advantage.... Courts must prevent parties from misusing motions for disqualification as instruments of harassment or delay. *Switch Communications Group v. Ballard*, No. 2:11-cv-00285-KJD-GWF, 2011 WL 3859725 at *2 (D. Nev. Aug. 31, 2011) (citations omitted). Considerations include "the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice." *Richard and Sheila J. McKnight 2000 Family Trust v. Barkett*, No. 2:10-CV-01617-RCJ-GWF, 2016 WL 3360957, at *2 (D. Nev. June 10, 2016) (citation omitted). Doubts about disqualification are generally resolved in favor of disqualification, but "this assumes that the moving party has presented sufficient facts demonstrating that disqualification is a close call." *Practice Mgmt. Solutions, LLC v. Eighth Jud. Dist. Ct.,* No. 68901, 2016 WL 2757512, at *3 n. 4 (Nev. May 10, 2016). The party seeking disqualification has a "'high standard of proof to meet in order to prove that counsel should be

disqualified.'" *Id.* (quoting *Plant Genetic Sys., N.V. v. Ciba Seeds*, 993 F. Supp. 514, 517 (M.D.N.C. 1996)).

Federal courts apply state law to decide whether a lawyer should be disqualified from representing a party based on a prior representation in a lawsuit. *Reading Int'l., Inc.. v. Malulani Grp, Ltd.*, 814 F.3d 1046, 1049 (9th Cir. 2016) (citing *In re City of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000). Nevada has adopted the "substantially related" test for reviewing conflicts based on prior representation. *See, e.g., Nevada Yellow Cab Corp. v. District Court*, 152 P.3d 737, 741 (Nev. 2007); *Waid v. District Court*, 119 P.3d 1219, 1223 (Nev. 2005). Rule 1.9 of the Nevada Rules of Professional Conduct codified this standard:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

There is no dispute that Ms. Casillas had an attorney-client relationship with Mr. Tormohlen in *CHR v. FLS*. There is no dispute that Ms. Casillas has not consented to allow Mr. Tormohlen to represent FLS in this action. Finally, there is no dispute that Mr. Tormohlen's current representation of FLS is materially adverse to Ms. Casillas. The pivotal question here is whether the matters at issue in this case are "substantially related" to the issues litigated in *CHR v. FLS*. Courts presented with this question should:

> (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present litigation.

*Nevada Yellow Cab*, 152 P.3d at 742.

"A matter is substantially related to a prior matter 'if the factual contexts of the two representations are similar or related, regardless of whether confidences were in fact imparted to the lawyer by the client in the prior representation.'" *Coles v. Arizona Charlies*, 973 F. Supp. 971,

5

974 (D. Nev. 1997). The touchstone is "the precise relationship between the present and former representation." *Waid*, 119 P.3d at 1223. Further,

> "[i]n proving that a prior representation is substantially related to present litigation, however, the moving party is not required to divulge the conifdences actually communicated, nor should a court inquire into whether an attorney actually acquired confidential information in the prior representation which is related to the current representation. [Courts] should instead undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to the client in the later matter.

*Id.* at 1223 (quoting *Robbins v. Gillock*, 862 P.2d 1195, 1997 (Nev. 1993)).

### A. The scope of Lewis Rice and Mr. Tormohlen's representation of Ms. Casillas in *CHR v. FLS*

The court has reviewed CHR's claims against FLS in the 2008 action, and it finds that they closely parallel those in the present action. However, in *CHR v. FLS*, the shoe was on the other foot. It was CHR who accused FLS of expanding its business to Reno, poaching its CHR employees (including Ms. Casillas), soliciting CHR's customers, and misappropriating CHR's confidential and proprietary information. (ECF No. 60, Ex. 5). A comparison of the claims for relief alleged in *CHR v. FLS* and the present case is instructive:

| Claims in the *CHR v. FLS* matter | Claims in the instant matter |
|---|---|
| · Breach of the Duty of Loyalty and Fiduciary Duties | · Breach of the Duty of Loyalty and Fiduciary Duties |
| · Breach of Contract | · Breach of Contract |
| · Tortious Interference with Contractual and Prospective Contractual Relations | · Intentional Interference with Contractual Relations |
| · Unjust Enrichment | · Unjust Enrichment |
| · Inducing, Aiding and Abetting Breaches | · Aiding and Abetting Breaches of Contractual and Legal Duties |
| · Conspiracy | |
| · Unfair Competition | · Civil Conspiracy |
| · Misappropriation | · Breach of the Implied Covenant of Good Faith and Fair Dealing |

The parties settled *CHR v. FLS* in February 2011. (ECF No 69).

In support of her motion to disqualify, Ms. Casillas provides a detailed declaration about the advice Mr. Tormehlen gave her concerning the defenses to claims asserted against her in *CHR v. FLS*. (ECF No. 60, Ex. 8). She attests to the information Mr. Tormehlen gathered from Ms.

6

Casillas about her employment with CHR, as well as information she obtained during employment with FLS. *See Id*. Ms. Casillas further declares that Mr. Tormehlen spent about eight hours with her to prepare for her deposition, and that they had numerous communications about discovery issues, court filings, affidavit preparation, and negotiation of the settlement. *See Id*. After the case settled, Ms. Casillas continued to communicate with Mr Tormehlen about related matters. *See Id*. Ms. Casillas further asserts that a review of the file from the *CHR v. FLS* case corroborates her declaration about the scope of Mr. Tormehlen's representation. (ECF No. 60, Exs. 9 through 18).

Mr. Tormehlen responds with his own affidavit and his recollection differs from that of Ms. Casillas, having reviewed the case file and billing records in *CHR v. FLS*. (ECF No. 69, Ex. 8). Mr. Tormehlen prepared a 2009 memorandum after speaking with Ms. Casillas and contends that this is the best evidence of what Ms. Casillas told him. *Id*. at ¶ 7. Although Mr. Tormehlen does not recall specifically discussing the defenses Ms. Casillas outlined in detail in her affidavit, he suspects that Ms. Casillas's "current counsel identified the defenses after reviewing the file, and the defenses were mentioned (if at all) in the briefs on in the Lewis Rice working file." *Id*. at ¶ 10. To the extent Mr. Tormehlen and his law firm provided information to Ms. Casillas, Mr. Tormehlsen attests that this was most frequently discussed in calls or meeting where other codefendants were present. (ECF No. 69, Ex. 4, Ms. Casillas Dep. at 16; Ex. 8, Tormehlen aff. ¶ 11).

Mr. Tormehlson does not recall discussing the "preparation privilege" with Ms. Casillas and contends that there would have been no reason to do so given the facts of the case. (ECF No. 69, Ex. 8, Aff. 4, para. 12). Finally, Mr. Tormehlen does not believe that any information Ms. Casillas provided to his firm is "in any way relevant to the present lawsuit, nor would it be confidential given that FLS and its owners were privy to it." *See Id*. at 4, ¶ 14.

In reply, Ms. Casillas contends that FLS devotes its response to attempting to narrow the scope of Mr. Tormehlen's representation in *CHR v. FLS* (ECF No. 77). Ms. Casillas claims that FLS and Mr. Tormehlen also try to recast Ms. Casillas's role in the prior case as "post-employment obligations," and the present case as only involving alleged breach of the duty of loyalty and

contractual interference by Ms. Casillas during her employment. (ECF No. 77). Ms. Casillas also asserts that if Mr. Tormehlen's recollection of his representation is as alleged in his declaration and FLS's response, it is belied by his obligation to defend her in *CHR v. FLS*:

> [T]o properly defend Casillas, not only did Mr. Tormehlen learn about the information Casillas had access to during her employment with C.H. Robinson, but he had to learn the information she had access to from FLS. After all, it was vital for Mr. Tormehlen to show any confidential information Casillas had was gained during her employment with FLS, not C.H. Robinson. **How else could he competently and zealously defend Casillas?**

*Id.* (emphasis in the original).

The court has reviewed the parties' declaration, the exhibits relating to *CHR v. FLS*, as well as the pleadings filed in the present action. There is only one conclusion to draw: the scope of Mr. Tormehlen's representation of Ms. Casillas in *CHR v. FLS* and his representation of FLS in the present case are substantially similar. The two lawsuits are certainly not identical, but that is not the standard. If it were, the rules governing disqualification would be sorely undermined. Pursuant to the plain language of Rule 1.9, the cases need only be substantially related. *Nevada Yellow Cab Corp. v. District Court*, 152 P.3d 737, 742 (Nev. 2007). The question is whether "the factual contexts of the two representations are similar or related." *Coles v. Arizona Charlies*, 973 F.Supp. 971, 974 (D.Nev. 1997). It makes sense that two cases may have some difference and still be similar or related. The court has reviewed the facts of the pending and prior case and concludes they are substantially similar. *See Sanchez v. American Family Mutual Insurance Co.*, 2012 WL 4498226 at *2 (D. Nev., Sept. 28, 2012). No amount of legal gymnastics through Mr. Tormehlen's past and present representations convinces the court otherwise. This factor favors Ms. Casillas.

**B.  Whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters**

As for the second element of the substantially-related test, Ms. Casillas claims that it is plainly reasonable that Mr. Tormehlen elicited confidential information from Ms. Casillas during the course of representing her in *CHR v. FLS* and even after the case settled. (ECF No. 60). Ms. Casillas points to the *CHR v. FLS* file, which she contends is replete with examples that Mr.

8

Tormehlen gathered critical information from Ms. Casillas. In addition, Ms. Casillas sought advice from Mr. Tormehlen on legal matters after the *CHR v. FLS* settled, and Mr. Tormehlen offers no competent evidence to the contrary. (ECF 60, Ex. 8; ECF No. 69, Ex. 8).

FLS responds that because Ms. Casillas was an FLS employee and provided most of her information in joint phone conferences with FLS owners and others, the information Ms. Casillas disclosed cannot be characterized as confidential. (ECF No. 69). FLS also asserts that the information Ms. Casillas provided is stale, and that to the extent she provided information in the prior lawsuit, it has nothing to do with the current case. *Id.* Ms. Casillas replies that Mr. Tormehlen would not have been doing his job has he not elicited confidential information from Ms. Casillas when he represented her in the prior case. The fact that Ms. Casillas may have discussed matters with Mr. Tormehlen while other FLS representatives were present does not make the information any less confidential to FLS.

It is reasonable to infer that the confidential information Ms. Casillas alleges she gave to Mr. Tormehlen would have been given to him in *CHR v. FLS*. This factor favors Ms. Casillas.

### C. Whether that information is relevant to the issues raised in the present litigation

At to the final element of the substantially-related test, Ms. Casillas claims that the information Mr. Tormehlen elicited from Ms. Casillas is directly relevant to the current case, and that Mr. Tormehlen is using the information he obtained to buttress FLS's case against her. (ECF No. 60, Exhibits 14, 15 and 24). FLS responds that these confidences are "not relevant to this case. *See* ECF No. 69 at 21. However, Ms.Casillas poses the question: "[I]f [Ms.] Casillas' [sic] confidences are not relevant, then why has Mr. Tormehlen identified those confidences in FLS' [sic] disclosures and discovery responses in this case? And why has Mr. Tormehlen used those confidences to formulate his central legal theories in this case?" (ECF No. 77 at 9) (emphasis omitted).

There is no escaping the conclusion that Ms. Casillas and Mr. Tormehlen exchanged confidential information in the course of Mr. Tormehlen's representation of Ms. Casillas in *CHR v. FLS* that also bears on the current case Mr. Tormehlen and his firm have filed against her now.

FLS cannot reasonably deny the relevance of the confidences Ms. Casillas shared with Mr. Tormehlen, and courts have held that disqualification is warranted under such circumstances. *See, e.g., Costello v. Buckley*, 199 Cal. Rptr. 3d, 891, 898 (Ct. App. 2016) (disqualification was warranted where it was evident from requests for admission the attorney propounded that he was utilizing information he gleaned from his prior representation against his former client); *Ulrich v. Heartst Corp.*, 809 F.Supp. 229, 235-36 (S.D.N.Y. 1992) ("Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses."). This factor favors Ms. Casillas.

Based on the foregoing, Ms. Casillas's motion to disqualify Mr. Tormehlen and Lewis Rice (ECF No. 60/61) is granted. The court shares Ms. Casillas's concern that although Holley Driggs was not involved in the prior lawsuit, Mr. Tormehlson may have shared Ms. Casillas's confidences with Holley Driggs. Mr. Tormehlson's conflict must be imputed to Holley Driggs; therefore Holley Driggs is also disqualified as local counsel for FLS.

### III.     Conclusion

Based upon the foregoing, Ms. Casillas's motion to disqualify (ECF No. 60/61) is **GRANTED**.

**IT IS SO ORDERED**.

DATED this 6th day of December, 2017.

_____
UNITED STATES MAGISTRATE JUDGE